Good morning, Your Honors. My name is James Lobsens, and I represent the parents of the child M.L. and M.L. I did receive the Court's directive two days ago, I guess it was, to be prepared to address the case of Ms. S. v. Fashion Island School District, and I propose to spend the bulk of my time on that issue. I would like to reserve five minutes for rebuttal. The question that I am asked to respond to is, in particular, the relevance of this case decided about eight days ago, and there's reference in the question to what relevance does it have given the amendments to the IDEA in 1997. I think to answer the question well, I want to give you in some detail, take you through the major statutory and regulatory changes that were made in 1997, because then I think I can intelligently address the Fashion Island case. What existed before 1997 amendments was extremely little guidance from Congress about who should be on an IEP team. Before 1997, in the statutes, the only thing that mentioned any teacher of the child was in Section 1401, which is the definition section. At that time, the definition of the term Individualized Educational Program, or IEP, was in subsection A20 of 1401. At that time, that statute was defining the IEP, was defining a written document about the child, and it said an IEP means a written statement for each child with a disability developed in a meeting by, and then listed a number of types of people who were going to be in this meeting, one of which was the teacher. The teacher, unadorned, didn't say the past teacher, the present teacher, the possible future teacher. It didn't say special education teacher. It didn't say regular education teacher. And there was a regulation at that time, 300.344, which gave guidance to school districts across the country about what that meant. The statute also didn't, by the terms of the statute, the statute didn't mandate that these people be on this team, because this statute was actually just defining a written document, and in descriptive terms said it is a document written by a team of these people. Major changes were made in 1997. First of all, this one statute, 1401 sub A sub 20, was drastically changed by drastically shortening it and cutting out all kinds of stuff that had been in it and putting in instead a cross-reference to a new section 1414D. So 1401A20 changed to read, the term individualized education program or IEP means a written statement for each child with a disability that's developed, reviewed, and revised in accordance with section 1414D of this title. So Congress said you're going to have to go look at this new subsection that we're writing of the statute for further guidance. One thing I want to point out that's new there is that previously an IEP was just a document developed, a written statement developed, and they added words reviewed and revised, because in 1414 they talk about how it has to be periodically reviewed and revised. 1414D was a very long, complicated, new definition of IEP, the written document with lots of detail about what it had to include that had not been in statutory form ever, and also it defined a new term, the IEP team, which to my knowledge, that term had never previously been used in a statute before, and I don't think it had been used in a regulation before, and it defined this team with great specificity. It said the team means a group of individuals composed of, and beyond the parents. It's specified now at least one regular education teacher of such child if the child is or may be participating in the regular education environment. Mr. Lobson, I have a question for you. I don't want to get you off your argument here. I'll just state my question briefly, and then you can address it at any point in your argument where it fits in. It seems to me, though I'm not making a final assessment yet, but it seems to me that the district erred by not having a regular education teacher present on the team to do the IEP in light of the 97 amendments, but that we have precedent that would say that that error would not amount to a denial of a FAP, of a free and appropriate education, unless there was some loss of an educational opportunity for the child. So my question for you is, can you demonstrate in your argument what was the loss, if any, of an educational opportunity for this particular child in this context? What would have been different if there had been a regular education teacher present? Well, I think I'll answer it now if I can, as best I can. If they'd included a regular education teacher, they would have included Jody Wicks, who's about 15 miles away in a neighboring school district and who they at least made one phone call to once. But she had been the child's regular education teacher for three years, give or take a very short period of time in one of those years when the child was in another class. Three years in preschool, right? Yes. I mean, the preschool one, preschool two, preschool three, and then this is for kindergarten. The parents wanted the child to be in a regular education class. That is the statutory presumption and the statutory mandate of Congress, if possible to do that, if practical. The parents' ability to participate in this process is devastated by not including the one person who has almost three years' worth of knowledge about the success that this child had in a regular education class. And instead, what they get is a team composed of people. No one has ever taught this child on this team. No one. And the only person on the team who has ever met the child is an administrator, a high-level administrator with many impressive credentials, a Ph.D. and something else. She met the child for two hours. That's it. That, I don't think any case that this court has ever decided or any other circuit has decided, cannot be treated as some minor technical deficiency. So I hope that's something of an answer. And I'll sort of return to my. Thank you. Well, let me ask a couple of questions on that, too. The teacher at the Tukwila School District was a preschool teacher. The child now is at a level of being in a kindergarten class. Is that correct? Yes. At the time of this. That's correct. And it's certainly true that what. Why should there not have been. And I'm not indicating to you that I think it was correct not to have a regular school teacher. But shouldn't they have had a regular kindergarten teacher rather than a regular preschool teacher where the. Curriculum is different. What they're trying to do is different. It's not a wrote giving the same songs in the same. But if they had each day to the children, this is totally different. Learning how to read, learning how to write early principles of math and so forth. Well, I have a couple of observations. First of all, I. If there had been years that had gone by, I mean, if Miss Wicks had taught, as she did, three years of primary pre-kindergarten, taught this child and then five years had gone by and now we're talking about whether he should be in a regular or special education fifth grade. I think there would be more concern about business which teaches very, very, very, very small children. Is her input going to be very important about the fifth grade? But every year, I mean, teachers at the end of one year make recommendations about where a child should be the next year. And the child's only going to be after summer, four months older. And they are familiar with that child. Children of that age. And she has been teaching a regular education class. So I don't think in this situation there's any reason to think that her input wouldn't be highly useful. Second, if they had included a regular education kindergarten teacher, they would have at least come closer to complying with the statute. However, the statute added their own school district, a regular classroom teacher who had experience with this child for five days. And they didn't include her either. But other than the one for five, they really didn't have anybody in that district with meaningful experience. With this child, that's correct. And so they were left with options, none of which were ideal, unless they were to reach out and bring in the teacher from the prior school district. Well, Your Honor, it may sound funny, but if they had included Ms. Ramsey, who was the regular education kindergarten teacher of this child for five days, then they would be standing here saying we complied with the statute. And I probably would have raised a completely different argument based on a different regulation, which says which is a regulation, not a statute. And based on case law, which says you're supposed to include people who have knowledge about this child. And five days, I would be arguing doesn't cut it. That isn't where we are because that isn't what happened. And I want to point out that the 1997 amendments, when they added this specificity, they also added the words of such child in each of these places. A regular education teacher of such child, a special education teacher of such child. So they wanted more. Congress made it very clear. They wanted more than just somebody whose general training was in either was in both special and regular education. A regular education teacher of that child. That's the one who taught that child for five days. If they had included that teacher, they would certainly have a stronger argument here. And I'd be making a different argument. They didn't include that one either. Don't we have law that suggests that the district is not required when you've got a student who's newly entered into a district? The district is not required to include a previous teacher from a different school district? No, I don't think you have a law that says that. And I can just. I didn't mean a statute. Well, why don't I jump into the case law? But could I make two points before I jump to the case law? They added specific subsections in the 1997 amendments. Beyond saying there has to be a regular education teacher, Congress gave guidance as to what that regular education teacher was supposed to do. And in D3C and D4B, in two places, they specifically said, these are the things we want the regular education teacher to do, to participate in the development of the IEP and to participate in the revision and reviewing of a past IEP. And in the commentary that accompanies Congress's amendments, it says that a regular education teacher has an increasingly critical role. The effective date of the 97 amendments was delayed by one year because these were massive changes. So they delayed it, giving people a whole year to learn about, get familiar with these new requirements. But this IEP, this IET meeting was in the year 2000, two and a half years after it had gone into effect. To address the case law, none of this Court's prior decisions have involved cases governed by the 97 amendments. They are all cases governed by pre-1997 law. So they are all cases that focus on the old 1401A20 reference to simply the teacher, with no elaboration. And they all go off on regulations, 300.344 primarily, which is completely different after 1997. I mean, it's still there. There's a regulation by that number, but it's completely different. And this Court did, in Clyde K., have to figure out how to apply that regulation, 300.344, on the facts of that case, which involved a 1992 meeting, IEP team meeting. W.G. v. Board of Trustees involved a 1987 IEP team meeting. And your most recent decision by Judge Gould is, even though it was decided in 2003, it involved a 1995 IEP team meeting. To directly address that case, the Vashon Island case, okay, it arose three years before the 1997 amendments took effect. The issue as to who needs to be on the IEP team was not raised in the opening brief. I obtained the briefs of all parties from counsel in the last few days and read them. The issue was not raised in the opening brief. They did raise four alleged procedural violations in the opening brief, which this Court addresses seriatim in its opinion, 1234. And then the Court says, further issues, and does begin to talk about an IEP team composition issue, which was raised apparently in the reply brief on page 9 of their reply brief on a page. It isn't the same issue because the claim was a violation of the pre-1997 version of Regulation 300.344. So it's an issue about whether or not the child's teacher was included. I might mention just that when we send an order out, this is for both counsel, you know, that they be prepared at argument to discuss the significance, if any, of this recent case. We're not really suggesting that it has any great significance necessarily. We just don't want counsel to be caught unawares if they missed it in the news reports and if they think there's something in it. I appreciate that very much, Your Honor, and I would have been shocked because I wouldn't have known about something eight days earlier. But the short answer, again, is it doesn't have any. The if any is a perceptive part of that question. But I guess I would suggest is you don't necessarily have to address a good deal of your argument to that prior opinion if it's not the key thing. For me, the key thing in this case, just speaking as one judge, is, okay, I think they should have had a regular education teacher there, and I think that's a very important provision. It's not a little technicality. But still, it seems to me that the crux of the issue is whether this child was denied an educational opportunity as a result of that. And that's what I'm wrestling with. And my answer there is he was denied the opportunity to be in a regular education class. He was denied the opportunity to have an IEP team fairly consider whether or not to be in a regular education class. He was denied meaningful input into the whole IEP process because the people who knew the most about him weren't there. And under pre-1997 law, I mean, it requires me to sort of spin a hypothetical world. But if the 1997 amendments had never been enacted, I still think under your decisions in both Target Range and the Shapiro case, which I filed a supplemental statement of authority because that was decided in January of this year after the briefs were written, in both of those cases, this Court found a procedural violation of the Act which resulted in setting aside the IEP, which resulted in a finding of a violation of the IDA because nobody knowledgeable about these children was on the IEP team. So I would submit, Judge Gould, that we would win even if the law had never changed. I would just be pointing to different regulations. I used more time than I thought I would. I did wish to address one other issue today, which was the issue about whether the failure to correct teasing of a disabled child can be grounds for a violation of the IDEA. I'd be happy to answer any questions you have about that. It probably is pretty clear from our briefs. It seems to me that the district court told me no because there's no case that says that. And I don't think that that's an adequate answer with all due respect to the district court. I hope this case will be the first case to say that it can. The problem I have, at least, is that I would agree with you that a new precedent could be made. It's not precluded because there's no case right on point. But the evidence of deliberate indifference of the school to the teasing isn't very strong. All I can say there, Your Honor, is that the district court never considered that evidence because it's found as a matter of law. We just couldn't bring such a claim. If I have any time, I have a little time left. I'll preserve it. James Dionne, Jr. Good morning, Your Honors. May it please the Court, my name is James Dionne, and I represent the Federal High School District in this matter, the appellee. Some of the background facts that I think the Court should be aware of. This student did attend the Federal High School District for five days, was withdrawn from the school district after five days. The school district went through a due process hearing that lasted longer than the student was in school. It went through a hearing that lasted eight days. We then had a district court action, and now we're before the Ninth Circuit. The student has long ago left the Federal High School District and is no longer within the boundaries of the district. The second thing, the second fact I think that the Court should be aware of is because the district thinks that this is a mainstreaming case, there has been some issues regarding whether the regular teacher should be there. And I do want to address those because I think Judge Gould brought up their importance to the Court, and I will bring them. I will start off with first clarifying the record. There was a regular ed teacher on the IEP team. The regular ed teacher did not show up for the meeting, was not a participant in the meeting, and that's a different standard. The standard is to whether or not they should be there to the extent appropriate is what the regulations and the statute say. And the district argues that it was not necessary for a regular ed teacher to be at this IEP meeting. But there was one on the team, and that person's name is Sarah Sopranari. It's not mentioned anywhere in any of the briefs, but it's in the record in the notices to parent. There was both the two notices. One said a regular ed teacher will be there. Another one said Sarah Sopranari, the kindergarten teacher at Wildwood, where the program eventually was, was available to be at. What does it mean if the teacher is on the team but doesn't go to the meeting? Well, and the point is, Your Honor, there's separate sections of the statute, separate sections of the regulation. There is a statute that's 1414d1b that says you have to have one on the team, but the separate section of whether they participate is d3c, and it's a completely different situation there. One is that has separate standards. So I agree substantively. What does it mean? Well, there will be, in many cases, multiple IEP meetings. I guess what I wondered is, do they get a written report of the meeting or minutes of the meeting? They talk about meetings. Or do they get nothing? Well, they have pre-planning meetings. They talk about before they get into the meeting what's going to occur, what the issues are in the building during the day. That's a common practice, Your Honor. What is the evidence in the record of the participation? There is no participation. There's a woman, so she didn't show up at the meeting. None. There is no participation, and I want to be clear on that. If that's your answer to Judge Allercon's question, then just shouldn't we view it as if she wasn't on the team? She didn't go to the meeting and she didn't participate. Your Honor, I don't want to quibble over that point. I think it may be technical. There could be a different standard, that the basic provision that there be a regular education teacher on the team is mandatory. It's not really qualified. But then the participation of that person is qualified to the extent practical or something like that. To the extent appropriate. That's exactly my point. So there is technical compliance with the technicality of having somebody on the team. So there's a technical compliance with the one provision because she's on the team. And then to the extent appropriate, you don't think it's appropriate because there was a prior evaluation or there was other evidence that leads the district to think that she wouldn't have much to say. Exactly. And the question as to whether or not she should have participated is a standard that's under the interpretive guidelines of the Office of Special Education. It is to be decided on a case by case basis by the IEP members at the meeting and mother. Mother didn't show up. She refused to show up. So she didn't get that input at the meeting to go to ask the team to go down the hall and bring the regular teacher into the meeting. So on the case by case analysis, the school district team makes the decision that the regular teacher isn't necessary to be at the at the. Was she down the hall when they had the meeting? Well, do I know she's down the hall? Typically, in these cases, there is that person down the hall or there's another one. They will find the person. It is a routine thing where people are brought into meetings because they're available. And if not, frankly, they would have had another chance to have another meeting, which was offered to parent in this case, which she did not take the district up on. Refresh my memory about this. I have I don't have every detail in the record committed to memory. But my understanding is the mother was invited to attend to be on this IEP team. And I guess because of frustration about the teasing or assignment or something else, the mother declined to the parents declined to attend. Did she refuse to attend? She wrote a letter before the meeting saying I'm refusing to attend. I don't want any of the teachers at Wildwood at the IEP meeting. I don't want to attend the meeting at Wildwood. And so she refused to attend, said she wasn't available, which was clearly a lie. The record disclosed that she was available at the time of the meeting and her husband was available. And she had lied about that, about her husband not being available. And both of them were proven to be available. And those are findings by the administrative law judge. So the question whether if that's the main issue for the court, the question as to whether or not a reg-red teacher should be there, is that standard to the extent appropriate? We think that the mother had the chance to have input into that decision, as the Office of Special Education says, is the way that that decision is supposed to be made to the extent appropriate on a case-by-case basis. But there's also regulatory guidelines as to how you decide whether or not a reg-red teacher should be there. Under the new idea, it's actually a more limited standard than, I think, the Ninth Circuit's standard under previous case law and under the previous regulations and statute. Under the new standard, there's two, as Mr. Loveson cited in his brief and argued to you just a few minutes ago, there's two functions for that reg-red teacher. One they call a central role of being able to discuss the general ed curriculum of what the teacher teaches. And so they're able to respond to how that general ed curriculum needs to be modified for a particular child to be able to be accommodated into the classroom. In this case, there is no question that this child will not be involved in any general ed curriculum. Even in his prior school, in his prior setting, he was only in the mainstream environment for social reasons. He wasn't under the IEP. He would have 70 or 75 minutes a week of general participation in things like assembly. I will. Can I get back to that, Judge Gould? Because that's where I started to go with before your questions began. And I'd like to just finish my thought on the general ed teacher. There's two reasons. The central was because of their knowledge of general curriculum, which was not applicable in this case. And the second one is the critical role of their implementation of the IEP that's finally created. In this case, there is no reg-red teacher has absolutely no responsibility under this IEP for implementation of any part of the IEP. It's fifteen hundred minutes, especially designed instruction by the special ed staff. And to the extent, as we get into the 75 minutes that Judge Gould just asked me about, to the extent that the child is in the mainstream environment, the special ed staff comes with the child into that environment. Because the purpose of going into that general ed environment is to generalize the skills that are being taught in a very restrictive one-on-one, two-on-one setting in the self-contained program, to generalize them into different environments. So it's programmed for the child to go into these environments and to take what they've learned in that self-contained program, to be able to expand on the particular skill in other environments with other people. And that's programmed, delivered, monitored, supervised by the special ed teacher who goes with the child. The speech and language pathologist who goes with the child. The occupational therapist who goes with the child. Or the instructional assistant. There's a one-on-one instructional assistant with the child in the special ed program that goes with the child into the general ed environment and is performing the work that is designed by the special ed staff in that environment. Are you describing the Federal Way IEP? I'm describing the Federal Way IEP. I'm not following you then. We were just discussing the fact that there was no regular education kindergarten teacher participating in preparing them. Right. And now you're saying that the one that was prepared had nothing to do with a general education open kindergarten class. Right. There might have been, had there been a general education teacher's input. Isn't that true? We don't think so, Your Honor, because the — How do we know? Well, the district — the difference is, Judge, you had also pointed out in this case and all the other four cases that have talked about whether or not a current teacher has to be in the IEP, is the school district had just completed a thorough evaluation of the child. That's not a fact in any of the other cases. In fact, two of the other cases that were decided against school districts had absolutely no information. There was no evaluation information that was involved in the predictor IEP meeting. And so there was a need for more knowledge, and that knowledge was supplanted by having people from the private schools. We had just completed a thorough evaluation. The University of Washington professor Eileen Schwartz came in and testified it was the most thorough she had ever seen, had more information than she had ever seen for a child of this age. And that evaluation is not being contested before you today. It was contested at the due process hearing. The administrative law judge found it to be an appropriate evaluation, a thorough and complete appropriate evaluation. And that evaluation revealed that the child's skills were tremendously below the level that would be necessary for the child to be in a special ed program. There are 10 transitional skills that Dr. Geraldine Dawson identified in an article she published on mainstreaming on autistic programs, appropriate autistic programs, and that program, those programs in her articles been cited by the Ninth Circuit in the Adams versus the state of Oregon case and approved in that case. And those 10 skills had just been evaluated by this child. And this child had none of those skills. If you look at and Dr. Dawson said it is it is essential for a child to have these 10 transitional skills. If there's any chance of success in a mainstream environment, we had just completed an evaluation saying the child did not have those skills. And in fact, the IEP that was created had 10 goals and objectives that covered each of those 10 transitional skills. So the school district's purpose in the IEP was to get the child to develop those skills so that they would have meaningful opportunities to someday in the future be perhaps successful in a more or less restrictive environment. In our decision in the target range case, I think we said that a procedural violation of the IDEA would deny a child a FAPE, an F-A-P-E, free and appropriate public education. Only, quote, if the procedural inadequacies result in the loss of educational opportunity or seriously infringe the parent's opportunity to participate in the IEP formulation process. So I think that's our Ninth Circuit law. And so if if we were to reject your argument that you made earlier that there was a reg ed teacher on the team, and I'm not saying I'm rejecting it, but if we thought that the lack of participation just meant there was a procedural violation, then still, as I understand this law, the child would prevail in this case only if the child could show the result of not having the regular education teacher was the, quote, loss of educational opportunity. Those quotes are some infringement on the parent's rights to participate. Could you address from the district's point of view, I think you've already done this indirectly, but why you contend that there's no loss of an educational opportunity occasioned by not having a regular ed teacher at that meeting of the IEP team? Thank you, Your Honor. I think that the standard for no educational harm in this case is dramatically different than the W.G. case, where there were many violations of the procedural laws that aren't even being argued in this case. We think that, first of all, as we said, we don't think there's a violation of participation. Granted, if the Court finds there's a violation, remember this IEP was based on a current evaluation. W.G. did not have that fact in it. None of the Shapiro didn't have that fact in it. Dashon and Clyde Kaye did not have that fact in it. In fact, the courts talked about the interim nature of the IEPs being developed for evaluation purposes as one of the reasons why I think the balance was decided in favor of the district. This district has an evaluation the judge has approved in this case, and it's not being appealed. It was also, the program was also based on the Dr. Geraldine Dawson's program that identified the essential components for a program for an autistic child. And it replicated each of the components that she described in this article and required, that were required to be available to the students. So it had a very highly qualified, much more highly qualified program than existed in the previous district. It also had the highest qualified experts at the IEP meeting of any of the four cases that you previously decided. The people that were at the meeting, Dr. Drinkwater wrote articles on inclusion, taught teachers at the University of Washington how to teach autistic children. Dr. Lee Saffrey has both education and experience teaching autistic children. She wrote the IEP. She has a sister who is autistic. She both helped raise and still continues to support that child. And the three other members of the team were experts in writing programs and implementing programs for autistic children. So you have those three differences that make sure that the program that's being offered is appropriate and that the right amount of inclusion is being considered. Plus you have an IEP in this case that has been determined to be substantively appropriate. Through a due process hearing with an administrative law judge agreeing that all the objectives and goals meet the requirements of the law, and it is substantively appropriate. That's also not a fact that exists in your other cases. So I think all those factors argue that there's no loss of educational harm. And the child never came back. And frankly, the other reason is the district offered other programs to the parent, offered another opportunity to come back in the notice of this that they had to provide. They offered parent another meeting and an opportunity to take advantage of a more integrated placement. They would just bring their child back. And the parent never requested to come back or to ask for another another IEP meeting. And so all those things we think argue for that there were no loss of education in this particular case. Your Honor, I think the other thing that I'd like to point out is that in the cases that you have, there is a two cases that have been decided against school districts as to whether or not they had knowledgeable people. You have dramatic changes to the program that's being offered in Shapiro. You have two years in a residential program for a child with cochlear implant and a program for the deaf. And the school district is proposing a new program in their own district. It's a program that was described as making the student a guinea pig for a program that nobody knew what the quality of it would be. That's a dramatic change that I think rightfully the Ninth Circuit has said that it required different people there if you're going to make those dramatic changes of a program in WG. I think there were four or five years of the school district showing that they could not even identify the child as disabled. When he was finally disabled, the recommendation was for an intense program in reading. And the school district said, and consistent with the previous night, he wasn't really disabled. They offered a very less intense program for remediating that reading than the parents requested. In both those circumstances, you have dramatic differences of opinion as to what the whether the changes should occur or not. However, in the two cases that you've decided for school district in Bashan and in Clyde, the programs, one, Clyde K., the parent had already agreed with the program and then revoked the agreement. And in Bashan, it was replicating the previous program. So there wasn't the dramatic differences in those cases. In this case, there is also not the dramatic difference between the program that this child is being offered and the one that the child had in his previous school as far as mainstreaming goes. Because, in fact, what's not being addressed in the record is the program. Well, the school district had eight and two thirds hours in the mainstream environment. In this offer, when you count the recess and the lunch and the other things where they're not in with the teacher, there's five hours of mainstream. There's fifty seven minutes on average a day out of fifty seven minutes on an average per day that they're actually in the general environment, although they're not in the regular classroom with the regular teacher. That's only for the 15 minutes. So you have five hours and that that time is part of the eight hours that are in Tukwila where they're having snack time and and and breaks from the from the school. So the five hours of of programming in the general environment is comparable to the eight hours there. But what I wanted to make a point, my final point is that program had 12 hours of the most restrictive placement you can possibly have. It was a home program, one on one for the child. So out of the twenty two hours of Tukwila, 14 hours were in the most restrictive placement that you could possibly have a child. Twenty five hours at Federal Way School District had children available to be models for the student. My time is up. I'd like to draw you out on one quick question. And we'll give Mr. Lobson's whatever an extra minute based on whatever you do. Could you just in a minute or two give me the district's position on the teasing issue? Because it does seem somewhat questionable that judge if Judge Kuhnhauer, the district court said if there's no prior precedent that teasing could ever be a substantive violation and forget about it. I think at some point it could. Yes, I will. I appreciate it. I think that the record before Judge Kuhnhauer and the supplemental record before you both indicate that the district does not tolerate teasing, that they took steps to have a policy against teasing. And even with the admissions of mother on the record as to each of the individual events, she the teacher responded that they would take care of it. The principal responded that they would take care of it, that the teacher had taken care of it. Mother admitted that the teacher had taken care of the only incident that the teacher said she knew about. This teacher had mother given the teacher three books to read to try and explain the child's disability to the classroom. And the teacher in the first week of school read those three books and chose a book that had changed and told mother she was going to change the name. So nobody in their classroom would would feel that she's talking about that particular child. And she was going to read that story to the children to make the children aware of the child's disability and to increase their chances of being empathetic towards that child. The school district had a policy against teasing. So I know Judge Kuhnhauer said that there is no cause of action. I think under the facts of the case, he was saying that there'd be no cause of action, that they wouldn't amount. They don't nearly amount to a prima facie case for deliberate indifference or any of the cases, current case law that's out there. Remember, the only case the Ninth Circuit I think has on teasing was the Clyde Cade case. Inferentially, they thought teasing was relevant for the whether or not the child should be in a regular environment or not in a regular environment. In that case, they cited the fact that the child was teased was a reason for putting the child in a more restricted placement. But the district just says that there is no facts that don't even come close to making a prima facie case for deliberate indifference. And in fact, the school district took care of the problem as it occurred. And that's their policy to take care of it. And they're very vigilant in doing that. Okay. Well, thanks for addressing it. Thank you. I took your time. Two points, if I may. First, when counsel said that there was a regular education teacher on the IEP team but not present at the meeting, he said a name I have never heard of that I don't believe is in the record anywhere. And that argument has never been made by the school district, not in the district court, not in the briefs filed in this court. And I'm at a total loss to understand how suddenly here at oral argument there can be an argument that there was a regular education teacher on the team. But then the second point is to address, again, your continued focus on what's the result if it was violated. Judge Gould, you read some language out of, I forget which case, I think Shapiro. Target range. Target range. Target range. And it has sort of two parts, either A or B. And that's the type of. One part was the loss of educational opportunity. The other was infringing on the parents' participation. And I would say it meets both of those and just point you to two things that make two arguments. First, the decision in Shapiro, which was, again, under pre-1997 law. On the last page of my statement of supplemental authority, I have quoted this language. The Paradise Valley School District's failure to include the person's most knowledgeable about Dory's educational levels and needs resulted in lost educational opportunity for Dory. It met the lost educational opportunity because if people without knowledge aren't there, they don't have any opportunity to get what they want for Dory. It also seriously infringes the parents' participation. If you say the parents could come, but they can't talk to anybody who has any knowledge of their child and who's a regular education teacher of their child, it still seriously infringes their participation. They're left saying to this room full of experts, we know better because it's our child, but you won't let us have the people on the team that are supposed to be on the team and the people who know our child and the person who's taught our child for three years. But they say that's okay and that that isn't a major violation, a serious procedural violation of the IDEA. I just can't fathom that, and I hope this Court can't either. Thank you. Thank you both counsel for the argument. The case is under submission. I could do another one, but I'm going to move on.
judges: Alarcon, Gould, Clifton